IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

KAREEM JACOX,

    Plaintiff,

vs.                                No. 16-2303-SHL-dkv

LORETTA LYNCH, ATTORNEY GENERAL
UNITED STATES DEPARTMENT OF JUSTICE,

    Defendant.

_____

REPORT AND RECOMMENDATION ON THE DEFENDANT'S MOTION TO DISMISS

_____

On May 6, 2016, the plaintiff, Kareem Jacox ("Jacox"), filed a *pro se* employment discrimination complaint against the defendant U.S. Attorney General Loretta Lynch ("Lynch"), alleging that his former employer, the Drug Enforcement Administration ("DEA"), discriminated against him based upon his disability and retaliated against him. (ECF No. 1.) The case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.)

Now before the court is the September 12, 2016 motion filed by Lynch to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. (ECF No. 9.) On September 21, 2016, Jacox filed a response in

opposition, (ECF No. 10), to which Lynch replied on October 3,

2016, (ECF No. 11).   On October 11, 2016, Jacox filed another

"Pro Se Response to Motion to Dismiss for Failure to State a

Claim."   (ECF No. 12.)   To the extent that Jacox intended to

file a surreply, he did not request leave of court to file a

surreply as required by the Rules of Civil Procedure or the

court's Local Rule 7.2(c).   Therefore, Jacox's second "Pro Se

Response to Motion to Dismiss for Failure to State a Claim" is

not appropriately filed and the court will not consider it in

this Report & Recommendation.[1]

     For the reasons that follow, the court recommends that

Lynch's motion to dismiss be granted and that Jacox's claims be

dismissed for failure to state a claim upon which relief can be

granted.

---

     [1]In any case, Jacox's October 11, 2016 filing merely repeats
his complaint allegations and does not add anything of substance
to his response to Lynch's motion to dismiss.  (*See* ECF No. 12.)

     Thereafter, on October 21, 2016, Jacox filed an amended
complaint.   (ECF No. 14.)   On October 27, 2016, Lynch filed a
motion to strike Jacox's amended complaint because it was not
filed within 21 days of Lynch's motion to dismiss and Jacox did
not obtain permission from the court or Lynch before filing the
amended complaint.   (ECF No. 15.)   On October 28, 2016, the
undersigned U.S. Magistrate Judge granted Lynch's motion to
strike the amended complaint because Jacox did not meet the
requirements of Rule 15.   (ECF No. 16.)   Pending before the
court is Jacox's November 7, 2016 "Motion for Review of and
Objection to the United States Magistrate Judge's Order," in
which he requests the presiding district court judge to "vacate,
reverse, and/or modify" this court's October 28, 2016 order
granting Lynch's motion to strike.  (ECF No. 17.)

I.    PROPOSED FINDINGS OF FACT

In his complaint, Jacox alleges that he was hired by the DEA in 2004 and became a Special Agent with the DEA in 2005. (Compl. 5, ECF No. 1.)   In April 2013, Jacox was called into active Army Reserve duty where he served through December 2013. (*Id.*)   In October 2013, Jacox contacted DEA's Health Services Unit to report "changes in his health that could affect his performance as a Special Agent."  (*Id.* at 5-6.)   On December 12, 2013, Jacox informed DEA's Health Survives Unit that: (1) he was released from active duty and was to report back to work on December 16, 2013; (2) that his healthcare provider had determined him to be completely disabled and had taken him off work; and (3) that he would be undergoing complex health care services.   (*Id.* at 6.)

In January 2014, Jacox began the process of applying for Federal Employees Retirement System ("FERS") disability retirement. (*Id.* at 7.)  On January 16, 2014, Jacox submitted a Social Security Administration ("SSA") disability form to his immediate supervisor Gabe Bewley ("Bewley") to complete and return within seven days.   (*Id.*)   The SSA disability form specifically asked Jacox's supervisor to assign a productivity percentage rating to Jacox. (*Id.* at 10.)  On January 21, 2014, Bewley informed Jacox that he gave the form to his own supervisor Brian Chambers ("Chambers"), who in turn sent the

form to Michael Stanfill ("Stanfill"), the Assistant Special Agent in charge of Tennessee. (*Id.* at 7-8.)  Jacox alleges that Stanfill called SSA representative Alicia Moore ("Moore") to collect healthcare information on Jacox.  (*Id.* at 9.)  Jacox advised Moore that he did not authorize her to reveal his protected healthcare information to Stanfill.  (*Id.*)  Bewley informed Jacox that Stanfill could not complete the SSA disability form because he could not assess a productivity percentage for Jacox.  (*Id.*)  Stanfill also told Jacox that he could not complete the form "if they did not know what's going on with him."  (*Id.* at 13.)

Stanfill's attempt to obtain information about Jacox's medical condition prompted Jacox to file an online complaint for harassment with the Office of Special Counsel against Stanfill on February 26, 2014.  (*Id.* at 13.)  Jacox alleges that on the same day, he received two memoranda.  (*Id.*)  The first memorandum was from Stanfill "to readdress and re-establish his work hours."  (*Id.* at 14.)  The second memorandum was from Roy Comer ("Comer"), DEA's Associate Special Agent in charge of the Atlanta Field Division, and placed Jacox on five days of administrative leave stating that Jacox's "erratic behavior [had become] a concern for his chain of command."  (*Id.* at 14; DEA Issued Mems. 5, ECF No. 1-10.)  Jacox alleges that no one at the

4

Memphis office had complained about his behavior before he received Comer's memorandum. (Compl. 17, ECF No. 1.)

Jacox alleges that starting on December 13, 2013 he was placed on limited duty. (*Id.* at 7.) Later in the complaint, Jacox states that he was granted at least four hours of leave for each day from December 16, 2013 through February 6, 2014. (*Id.* at 15.) Jacox alleges that the "approved leave requests were excludable days for availability pay calculations." (*Id.* at 15-16.) Although not completely clear from the complaint, it appears that Chambers and Stanfill questioned Jacox's office hours and the parties disagreed about the availability pay regulation. (*Id.* at 16, 19.) Jacox alleges that on March 11, 2014, Bewley informed Jacox that Chambers wanted Jacox "to write a series of Memorandums for medical necessity for work hours." (*Id.* at 21.) According to Jacox, on March 12, 2014, Chambers issued Jacox "a formal referral to the Employee Assistance Program for alleged unprofessional and erratic behavior in the office." (*Id.*) On the same day, Jacox "contacted the Atlanta DEA Field Division Officer to make a complaint of harassment." (*Id.*) On March 21, 2014, Chambers informed Jacox that he was reassigned to report to him. (*Id.*) Jacox alleges that the reassignment did not follow agency standard operating procedures. (*Id.*)

Jacox further alleges that on April 11, 2014 he requested sick leave beginning on April 18, 2014.  (*Id.*)  Jacox states that Chambers initially denied Jacox's request but eventually approved it.  (*Id.* at 22.)  On April 15, 2014, Jacox was directed to undergo a Suitability Review Protocol ("SRP") evaluation which was scheduled to be conducted in Washington, D.C., from May 5 through May 8, 2015.  (*Id.* at 22; DEA Issued Mems. 6-7, ECF No. 1-10.)  On April 22, 2014, Jacox was again directed to undergo a SRP evaluation scheduled to be conducted in Washington, D.C., on May 27 and 28, 2014.  (Compl. 23, ECF No. 1; DEA Issued Mems. 8-9, ECF No. 1-10.)  On September 25, 2014, Jacox was issued a third memorandum directing him to undergo a SRP evaluation process.  (DEA Issued Mems. 15-16, ECF No. 1-10.)  Jacox informed Chambers that he would not be going to Washington, D.C.  (Compl. 23, ECF No. 1.)  Jacox was instructed that failure or refusal to report for a scheduled SRP would subject him to disciplinary action.  (Ex. 2 at 51, ECF No. 1-8.)

On September 5, 2014, Jacox was issued a memorandum placing him on leave restriction for excessive use of unscheduled leave. (Compl. 23, ECF No. 1; DEA Issued Mems. 10-14, ECF No. 1-10.) Jacox alleges that on October 7, 2014, Stanfill hand-delivered a letter to Jacox threatening him with immediate disciplinary action including termination if Jacox refused to sign receipt of

6

the memorandum.    (Compl. 23, ECF No. 1.)    Jacox retired on

October 31, 2014.  (*Id.*)

Based on these events, Jacox claims that Stanfill

"prevented and interfered with . . . Chambers . . . from fairly

supervising [Jacox] after [he] was placed on limited duty."

(*Id.* at 18.)   Jacox alleges that he was singled out by Stanfill

as Stanfill did not question other DEA Special Agents' time and

attendance.   (*Id.* at 18.)   Further, Jacox states that other DEA

Special Agents "that had issued medical advisories by the Health

Services Unit were treated more favorably than [Jacox]" because

they were not issued memorandum for erratic behavior and

unsatisfactory work.  (*Id.* at 18-19.)

On September 17, 2014, Jacox filed an employment

discrimination complaint against the DEA alleging discrimination

based on disability and retaliation.   (Ex. 1 at 5, ECF No. 1-1.)

Jacox amended his complaint on two occasions.    (*Id.*)    On

February 2, 2016, following an investigation, the Department of

Justice issued a final decision in which it concluded that Jacox

was not subjected to either disparate treatment or a hostile

work environment based on disability or reprisal.   (*Id.* at 2.)

Thereafter, on May 6, 2016, Jacox filed the instant complaint.[2]

---

[2]Jacox's complaint is timely filed.    Discrimination
complaints brought by federal employees against their employer
are governed by the Federal Sector Equal Employment Opportunity
("EEO") process, 24 C.F.R. Part 1614.   The EEOC is the agency

For relief, Jacox requests compensatory damages of no less than $300,000, pecuniary losses caused by the DEA, punitive damages, and costs including attorney's fees.  (Compl. 24, ECF No. 1.)

## II.  PROPOSED CONCLUSIONS OF LAW

## A.  Standard of Review for Failure to State a Claim

In assessing whether Jacox's complaint states a claim upon which relief may be granted, the court applies the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007).  To survive Rule 12(b)(6) dismissal following *Iqbal* and *Twombly*, a complaint must "'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625,

---

charged with implementing and enforcing the EEO process.  42 U.S.C. § 2000e-16.  EEO regulations provide that after the complainant files a formal complaint with the agency that allegedly discriminated against him, here the United States Department of Justice, there is an investigation and a final agency decision.  29 C.F.R. §§ 1614.106 through 1614.110.  Upon receiving the agency's final decision, the complainant can elect to either pursue a federal civil action within 90 days of the receipt of the agency's final decision, *Id.* § 407(a), or appeal to the EEOC's Office of Federal Operations within 30 days of receipt of the agency's final decision, *Id.* § 1614.402(a). Here, the agency issued a final decision on February 2, 2016, which Jacox received on February 8, 2016.  (Ex. 1 at 1, ECF No. 1-1.)  Jacox did not elect to appeal the agency's final decision to the EEOC and filed the instant federal civil action within 90 days of the agency's final decision.

629 (6th Cir. 2009)(quoting *Iqbal*, 556 U.S. at 678).   The court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief.   *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012).   However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.   Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed."   *Williams*, 631 F.3d at 383 (internal quotation marks omitted).   *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure.   *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff]

has not spelled out in his pleading." (internal quotation marks omitted)); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004)("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants.   Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party.   While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

In his complaint, Jacox alleges that the DEA discriminated against him "based upon his mental and physical disability and for retaliation."   (Compl. 1 ¶ 1, ECF No. 1.)   The court will analyze below whether Jacox has set forth viable disability discrimination and retaliation claims.

In paragraph 8 of his complaint, Jacox also checked the box for sex discrimination.   (*Id.* at 4 ¶ 8.)   Jacox, however, has not set forth any facts from which the court can infer that any

alleged discrimination against him was based on his sex. Therefore, to the extent that Jacox purports to set forth a discrimination claim based on his sex, the court recommends that it be dismissed for failure to state a claim under which relief may be granted.

B.   ADA Disability Discrimination Claim

Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791, prohibits discrimination against otherwise qualified federal employees with disabilities on the basis of those disabilities.   29 U.S.C. § 791(f) provides that "[t]he standards used to determine whether this section has been violated . . . shall be the standards applied under . . . the American with Disabilities Act of 1990," 42 U.C.S. § 12111 *et seq.*   The American with Disabilities Act ("ADA") prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."   42 U.S.C. § 12112(a).   A plaintiff can establish a disability discrimination claim through direct evidence or through circumstantial evidence under the *McDonnell Douglas* framework.   *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998).   "Direct evidence is evidence that proves the existence of a fact without requiring any inferences."

11

*Rowan v. Lockheed Martin Energy Sys., Inc.,* 360 F.3d 544, 548 (6th Cir. 2004)(citations omitted). "[W]hen an employer admits (or the evidence establishes) that its decision was based upon the employee's disability, direct evidence of discrimination exists." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1180 (6th Cir. 1996), abrogated on other grounds by *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012).

If a plaintiff seeks to establish a disability discrimination claim through circumstantial evidence, he must plead: (1) that he is disabled; (2) that he is otherwise qualified for the position, with or without reasonable accommodation; (3) that he suffered an adverse employment action; (4) that the employer knew or had reason to know of his disability; and (5) that either he was replaced by a nondisabled person or his position remained open while the employer sought other applicants. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008)(internal citation and quotation marks omitted)(citing *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007)); *Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007)(setting forth the same *prima facie* elements under the Rehabilitation Act); *Monette*, 90 F.3d at 1186. The last prong "may also be satisfied by showing that similarly situated non-protected employees were treated more favorably."

12

*Jones*, 488 F.3d at 404 (citing *Tally v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995)).

Here, Jacox has not pled direct evidence of disability discrimination. To the extent Jacox seeks to establish a disability discrimination claim through circumstantial evidence, he has not sufficiently pled the *prima facie* elements of his claim. As to the last prong of the *prima* facie test, Jacox was not terminated nor did his position remain open while the employer sought other applicants. Therefore, Jacox must allege the alternative formulation of the final prong of the *prima facie* test, i.e., that similarly situated nondisabled employees were treated more favorably. "To be considered 'similarly situated, the individuals with whom [Jacox] seeks to compare his[] treatment must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Jones*, 488 F.3d at 405 (quoting *Gray v. Toshiba Am. Consumer Prods.*, 263 F.3d 595, 599 (6th Cir. 2001)).

Jacox has not pled any facts showing that similarly situated nondisabled employees were treated more favorably. He has not identified any individuals who engaged in the same conduct as he had. Moreover, Jacox pled that other agents with medical advisories "were treated more favorabl[y]" and the DEA

13

"did not show the same interest in other persons with disabilities when they were placed on limited duties and issued medical advisories." (Compl. 18-19, ECF No. 1.) These allegations undermine Jacox's claim that his disability contributed to the DEA's alleged discrimination against him.

Furthermore, as to the second prong, Jacox has not alleged that he was qualified for the position of Special Agent with the DEA with or without reasonable accommodation. Indeed, when the alleged discrimination occurred, Jacox was, in fact, in the process of applying for disability benefits and his healthcare provider had already "determined and identified him to be completely disabled." (Compl. 5-6 ¶¶ s, t, ECF No. 1.) Jacox has not alleged that even with reasonable accommodations, he would have been able to perform the essential job functions of a Special Agent.

Therefore, Jacox has not pled sufficient facts to plead the *prima facie* elements of his ADA disability discrimination claim and the court recommends dismissal of such claim.

C.   ADA Retaliation Claim

Jacox alleges that the DEA retaliated against him in violation of Section 717 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16and 29 C.F.R. § 1614.101(a) and (b). (Compl. 1, ECF No. 1.) Under 29 C.F.R. § 1614.101(b), federal employers are prohibited from retaliating

14

against employees for opposing any practice made unlawful by,
*inter alia*, Title VII, 42 U.S.C. § 2000e *et seq.*, and the
Rehabilitation Act, 29 U.S.C. § 791 *et seq.*  Although he
references Title VII, Jacox has not alleged any facts
implicating Title VII.  Therefore, the court will construe
Jacox's retaliation claim as brought under the Rehabilitation
Act and the ADA.

Because Jacox does not allege any direct evidence of
retaliation, the court analyzes his claim using the *McDonnell-
Douglass* burden-shifting approach.  To establish a *prima facie*
case of retaliation, Jacox must show that: (1) he engaged in
activity protected under the ADA; (2) the employer knew of that
activity; (3) the employer took an adverse action against Jacox;
(4) there was a causal connection between the protected activity
and the adverse action.  *Rorrer v. City of Stow*, 743 F.3d 1025,
1046 (6th Cir. 2014).  As to the first prong, "[t]he ADA is not
[] a catchall statute creating a cause of action for any
workplace retaliation, but protects individuals only from
retaliation for engaging in . . . activity covered by the ADA."
*Id.* (citing 42 U.S.C. § 12203(a)).  ADA's retaliation provision
does not protect an employee who contests or opposes "employment
decisions that do not involve any claims of discrimination."
*Id.*

15

Here, Jacox alleges that on February 26, 2014, he filed an online complaint for harassment with the Office of Special Counsel against Stanfill. (Compl. 13, ECF No. 1.) As a result, according to Jacox, the DEA took an adverse action when it issued him two memoranda on February 26, 2014. (*Id.* at 13.) These allegations are insufficient to set forth a *prima facie* claim of retaliation. Jacox has not alleged that he engaged in protected activity under the ADA. Jacox's February 26, 2014 complaint that he filed with the Office of Special Counsel does not involve any claims of disability discrimination. As Jacox alleges, the February 26, 2014 complaint included a claim for harassment against Stanfill based on Stanfill's attempt to "find out about [Jacox's] protected health information." (*Id.* at 12.) It is unclear how Stanfill's request for Jacox's medical information constitutes disability discrimination. The only plausible inference for Stanfill's request for Jacox's medical information, as also indicated by Stanfill himself, is that Stanfill needed Jacox's information in order to complete the SSA disability form. (*See id.* at 7, 9, 13.) Therefore, it cannot be said that in his harassment complaint to the Office of Special Counsel Jacox contested or opposed an employment decision that was based on discrimination. The court recommends that Jacox's retaliation claim based on his filing of the February 26, 2014 complaint be dismissed.

16

Jacox also alleges that on March 12, 2014, he contacted the Atlanta DEA Field Division Officer to make a complaint of harassment.   (*Id.* at 21.)   It is unclear from this sole allegation whether Jacox's March 12, 2014 complaint constituted "protected activity" or whether the DEA took any adverse action against Jacox in retaliation for this complaint.   Jacox has not alleged sufficient facts to infer retaliation, and, therefore, the court recommends that Jacox's ADA retaliation claim based on his March 12, 2014 complaint be dismissed.

In sum, Jacox has not alleged that the DEA retaliated against him because he engaged in a protected activity such as "oppos[ing] any act or practice made unlawful by [the ADA] or . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]."   42 U.S.C. § 12203(a).   Therefore, the court recommends that Jacox's ADA retaliation claim be dismissed for failure to state a claim upon which relief may be granted.

D.   Failure to Accommodate Claim

It is unclear from the complaint whether Jacox purports to set forth a failure to accommodate claim.   In paragraph 8 of the complaint, Jacox alleges that the DEA failed to "timely, without excessive interruption, approve [his] mandatory request for sick leave as a disabled veteran."   (Compl. 4 ¶ 8, ECF No. 1.)   Later in the complaint, Jacox alleges that on April 11, 2014, he

17

requested sick leave beginning April 18, 2014, and that his request was ultimately approved. (*Id.* at 21-22.)  It is unclear from the complaint whether Jacox requested and was denied other sick leave.

Nevertheless, to the extent that Jacox purports to set forth a failure to accommodate claim, he has not exhausted his administrative remedies.  A person seeking to bring a discrimination claim in federal court "must first exhaust [his] administrative remedies."  *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006)(citation omitted).  A plaintiff thereafter may file suit "only in regard to the claims asserted in the EEOC charge and those within the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination."  *Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 471 (6th Cir. 2008).

As stated previously, Jacox filed a formal employment discrimination complaint against the DEA on September 17, 2014. (Ex. 1 at 5, ECF No. 1-1.)  Jacox's EEOC charge did not assert a reasonable accommodation claim.  The Department of Justice conducted an investigation on two issues: (1) "whether [Jacox] was discriminated against based on disability," and (2) whether the DEA retaliated against him.  (*Id.*)  Therefore, Jacox has failed to exhaust his administrative remedies with regard to a failure to accommodate claim.  To the extent that Jacox purports

18

to set forth such claim, the court recommends that it be dismissed for failure to exhaust administrative remedies.

## III.  RECOMMENDATION

For the foregoing reasons, it is recommended that Lynch's motion to dismiss be granted and that Jacox's claims be dismissed for failure to state a claim upon which relief can be granted and for failure to exhaust administrative remedies.

Respectfully submitted this 23rd day of November, 2016.


s/ Diane K. Vescovo_____
DIANE K. VESCOVO
CHIEF UNITED STATES MAGISTRATE JUDGE


NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.

19